## Napier, et al. v. Combs, et al.

(Decided October 10, 1924.)

### Appeal from Perry Circuit Court.

1. Partition—Incumbent upon Plaintiffs Suing for Partition to Estab lish Title in Ancestor.—In action for partition by persons claiming as heirs it was incumbent upon them to establish title in their ancestor.

2. Partition—Paper Title of Land Held Not Shown.—Deeds and patents covering large tracts of land, not plotted upon map or otherwise located or identified, held not to show paper title in plaintiff's ancestor.

3. Boundaries—Line May be Established by Agreement, if Marked and Acquiesced in for Long Time.—Where adjoining owners in order to peaceably adjust a bona fide dispute as to correct location of dividing line agree to and do establish a line, such line is sufficient to support a claim of title if marked, acquiesced in, and held for long period of time.

4. Deposition—Must be Writen by Officer or Witness.—Under Civil Code of Practice, section 582, either witness or officer before whom testimony is given must write the deposition, and it cannot be written by attorney for party taking deposition, particularly in absence of either consent or personal presence of opposing counsel.

5. Adverse Possession—Cutting Timber on Land on One or Two Occasions is Insufficient to Establish Possession.—Cutting of timber on land on one or two occasions is insufficient to establish adverse possession.

W. C. EVERSOLE, BEN G. WILLIAMS and W. C. MARSHALL for appellants.

JOHN D. CARROLL, P. T. WHEELER, J. B. HOGE, T. E. MOORE, JR., and MORGAN & EVERSOLE, for appellees.

OPINION OF THE COURT BY JUDGE O'NEAL—Affirming.

This action was instituted December 16, 1915, by the appellants against the appellees, Thomas Combs, Eliza-

beth Napier Combs, his wife, and James B. Hoge, for the partition of a tract of land alleged to have been owned by T. G. Napier at his death and to have descended to appellants as his heirs at law.

In their petition they alleged that T. G. Napier, their ancestor, died intestate in March, 1901, survived by eleven children or their descendants; that at the time of his death he was seized and possessed of a certain described tract of land in Perry county, Kentucky, nine-elevenths of which they had inherited from him; that the appellee, Elizabeth Napier Combs, was a daughter of T. G. Napier, and as such inherited a one-eleventh interest in the land, and that her husband, appellee, Thomas Combs, owned one-eleventh by purchase from one of the heirs, and that they had sold and conveyed to appellee, J. B. Hoge, the mineral rights under their two-elevenths. Appellants prayed that the land be partitioned into eleven parts, that nine parts be allotted to them, two to the Combs and the mineral rights thereunder to appellee Hoge.

Appellees filed a joint answer denying the allegations of the petition and thus raised the controlling question in this case, which is, was T. G. Napier at the time of his death the owner of the title to the land sought to be partitioned? If he was not, then, of course, appellants who claim through him have no interest in or title to it and necessarily their right to a partition thereof fails. It was therefore incumbent upon the appellants to establish title in their ancestor, T. G. Napier. The lower court finding that they had "wholly failed to establish any title either legal or equitable, to any portion of the tract of land," dismissed their petition, and they appeal.

Appellants contend that T. G. Napier owned the land both by paper title and by adverse possession. In support of their claim to paper title they offered in evidence ten or more patents and deeds covering large tracts of land containing many times the acreage here in dispute, and they assert that somewhere in some of the descriptions in these exhibits is to be found the land in question. These tracts are not plotted upon a map or otherwise located or identified and it is utterly impossible for this or any court to determine whether the described land is contained within the boundaries set out in the numerous exhibits or to even ascertain the location of the boundaries themselves. One of the beginning points—as an illustration—is described as "Beginning on two beech trees and flat rock, on the west side of the Long fork of

the Trace fork of the Lost creek of Troublesome creek of said fork of said river, about 12 poles from said branch,'' and without a proper map this is meaningless.

The only appellee who undertakes to point out definitely the source of the alleged paper title claims under a title bond filed in the record. That bond is dated March 7, 1858, but was not recorded until June 8, 1917, or nearly two years after the institution of this action and 17 years after the death of T. G. Napier and 58 years after the date of its execution. The land therein referred to is described as ''a certain tract or parcel of land lying and being in the county of Perry and state of Kentucky, all that boundary of land of the folloing (*sic*) ground of Talton G. Napier branch containing about 300 acres more or less with all the appurtenances thereunto belonging or in any way apparting (*sic*) to T. G. Napier, etc.'' It will readily be seen that this bond does not contain the description of any land that may be definitely located and it is otherwise wholly ineffectual as a source of title. Nor is it urged as such by appellant's counsel, who seem to have abandoned the claim that T. G. Napier possessed a paper title to the land, since they have not discussed that subject in their brief. However, whether abandoned or not, we are satisfied from our examination that the record wholly fails to establish such claim and the court did not err in so holding.

Appellants' contention that T. G. Napier held title by possession is likewise unsupported by the record. The evidence shows that Napier owned a large estate in land located on Sixteen Mile fork and Main Lost creek in Perry county at the time of his death in March, 1901. In the latter part of that year the appellants, as his heirs, by agreement divided his lands by deeds *inter alia,* each receiving a deed from the others to the parcel allotted to him. Appellant M. C. Napier received a deed to a tract which, roughly, lies north of and contiguous to the larger part of the land now in dispute. This land extended from M. C. Napier's southern line to a ridge of hills some distance to the south and was not divided by the heirs. They state that the reason they failed to divide it was the fact that there was some doubt in their minds as to its title, and they felt that it would be a source of litigation and therefore none of the heirs was willing to have it allotted to him. They assert, however, that it was a part of the estate of T. G. Napier and that he had held and occupied it to the top of the ridge to the south, and

that the ridge was the dividing line between Napier's property and the property of the holders of the title to the land south of the ridge. They sought to prove that the top of the ridge had been established by the then owners of the land north and south of the ridge as the dividing line between their respective properties, and that each had, therefore, held that line by and with the knowledge and consent of the other. Their claim, therefore, rested upon the establishment of this alleged line, and the greater part of the testimony and substantially all of counsel's brief are devoted to an attempt to prove and uphold the existence of this line. At the time of its alleged establishment, one James Williams owned all of the land lying south of the ridge. It is admitted that his patents and surveys extended over and across the ridge and into and over nearly, if not all, of the land now in dispute. Appellants assert, however, that certain patents and surveys of Macager Napier, from whom T. G. Napier is alleged to have obtained a part of his land, extended south of the ridge and into the land claimed by Williams, and that these two, in order to peaceably adjust a *bona fide* dispute as to the correct location of the dividing line, agreed to and did establish this conditional line.

We have, heretofore, held in numerous decisions that such a line may be established and that when established it is sufficient to support a claim of title if marked, acquiesced in and held for a long period of time. Standifer v. Combs, 184 Ky. 708.

We have carefully examined the evidence in this case, and are convinced that it wholly fails to meet any of these requirements. But one witness testifies with any degree of certainty or definiteness as to when, where or by whom the conditional line was established. The deposition of that witness was suppressed on appellees' motion upon the ground that it was taken in the absence of the appellee and their counsel, and the questions and answers were wholly in the handwriting of one of the attorneys for the appellants. The facts with reference to its taking are as follows: On June 23, 1919, appellants served a notice on appellees that on the second day of July, 1919, they would proceed to take the deposition of Austin Neace near Ned, in Breathitt county, Kentucky. The hour at which the deposition would be taken was not specified. On the morning of July 2nd, appellees' counsel, riding on horseback, met appellants' counsel some few miles from the home of Neace. The exact hour is in dispute, but it was evidently

some time around 10 a. m. Counsel for appellants informed counsel for appellees that the deposition had already been taken; that he could not return to Neace's home as his wife was sick and that the notary public before whom the deposition was taken had gone home, but that appellees' counsel might cross-examine the witness at any time he chose and in the absence of appellants' counsel. Thereafter and in due season appellees' counsel filed exceptions to the deposition for the reasons above stated. Those exceptions were never called up by either side and were not passed on by the court until the case was submitted, and at that time the court sustained the exceptions and suppressed the deposition. Section 582 of the Civil Code provides that the certificate of the officer taking a deposition shall state that the witness was duly sworn before giving his testimony and that the latter was written and subscribed to by him in the officer's presence or by the officer in the presence of the witness and read to and subscribed by the witness in the presence of the officer. Construing this section in the case of Western Union Telegraph Company v. J. B. Corso & Sons, 121 Ky. 322, this court held that:

> "The purpose of this provision was to procure an authentic statement of the witness under oath and also that it be definitely ascertained to what the witness has made oath, and therefore either that the witness himself shall write the deposition or that the officer shall write it, and when the officer writes it, to bring it directly to the attention of the witness after it is written, it must be read over to and subscribed by him. The object of having the officer write the deposition is to prevent the substitution of false depositions or the coloring of answers by having them written by parties who are interested in the litigation. . . .
> "We therefore conclude that an act is still the official act of the officer, though not personally done by him, if it is done under his direction in his immediate personal supervision."

While this interpretation has been given this section of the Code, it was never intended, and the decision above referred to so states, that a party interested in the outcome of the litigation could be employed or authorized by the officer to write the deposition, particularly in the absence of either the consent or personal presence of op-

posing counsel. Such procedure would necessarily open the way to fraud of every character, and while there is no charge or even intimation of fraud in the present case, we are convinced that the action of the trial court in suppressing the deposition was eminently proper and in strict conformity with the very spirit and purpose of section 582 of the Code. Appellants had ample opportunity to retake the deposition after the exception was filed and thus free it from even a taint of suspicion or illegality, but this they failed to do and they must abide the consequences. We have read the suppressed deposition and even if it be considered as evidence, it would not materially strengthen appellants' claim.

With this deposition out of the case, appellants' proof wholly fails to establish the existence of a conditional line or of adverse possession. A number of witnesses referred vaguely to having heard some conversation with reference to such a line. Some say that years before they had seen a few marked trees on the top of the ridge, but none of them definitely shows its location or extent, and all of them differ more or less as to the parties by whom the line was established.

The record also utterly fails to show any substantial evidence of adverse possession. The land is wild, uncultivated, unfenced and unimproved, and its boundaries apparently unknown. It is true that one or two witnesses testified that many years ago T. G. Napier had cut timber on it on one or two occasions, but this, even if true, is insufficient to establish possession. None of the appellants claimed this land or exercised any right of ownership over it from the date of their ancestor's death in March, 1901, until the institution of this action in December, 1915, although they promptly divided the rest of the property.

Moreover a large part of the land which appellants seek to partition is admittedly within the boundary of the parcel of their ancestor's land conveyed to appellant, M. J. Napier, by the other appellants and he having conveyed it to the appellees, it is obvious that appellants have no title to or interest in it.

It would not be difficult to demonstrate from the record that, even if possession had been proven, it was neither open, adverse nor continuous, but we do not deem it necessary to discuss this phase of the case further. It is sufficient to say that neither a conditional line nor adverse possession is satisfactorily proven by the evidence.

It is evident, therefore, that appellant had neither paper nor possessory title and the lower court did not err in so holding. Having no title to the land, it follows that they were not entitled to have it partitioned, and the court properly dismissed their petition.

Wherefore, the judgment is affirmed.